## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHEET METAL WORKERS' HEALTH &** | : | **CIVIL ACTION** |
| **WELFARE FUND OF LOCAL NO. 19** | : | |
| **1301 South Columbus Boulevard** | : | **NO.** |
| **Philadelphia, PA  19147** | : | |
| and | : | |
| | : | |
| **SHEET METAL WORKERS' PENSION FUND** | : | |
| **OF LOCAL NO. 19** | : | |
| **1301 South Columbus Boulevard** | : | |
| **Philadelphia, PA  19147** | : | |
| | : | |
| and | : | |
| | : | |
| **SHEET METAL WORKERS' ANNUITY FUND:** | | |
| **OF LOCAL NO. 19** | : | |
| **1301 South Columbus Boulevard** | : | |
| **Philadelphia, PA  19147** | : | |
| | : | |
| and | : | |
| | : | |
| **SHEET METAL WORKERS' VACATION FUND** | : | |
| **OF LOCAL NO. 19** | : | |
| **1301 South Columbus Boulevard** | : | |
| **Philadelphia, PA  19147** | : | |
| | : | |
| and | : | |
| | : | |
| **SHEET METAL WORKERS' SUPPLEMENTAL** | : | |
| **UNEMPLOYMENT BENEFIT (S.U.B.) FUND** | : | |
| **OF LOCAL NO. 19** | : | |
| **1301 South Columbus Boulevard** | : | |
| **Philadelphia, PA  19147** | : | |
| | : | |
| and | : | |
| | : | |
| **SHEET METAL WORKERS' JOINT** | : | |
| **APPRENTICESHIP FUND OF PHILADELPHIA** | : | |
| **AND VICINITY** | : | |
| **1301 South Columbus Boulevard** | : | |
| **Philadelphia, PA  19147** | : | |
| | : | |
| and | : | |

SHEET METAL WORKERS' INTERNATIONAL          :
TRAINING INSTITUTE (ITI)                    :
601 North Fairfax Street                    :
Suite 600                                   :
Alexandria, VA  22314                       :
                                            :
        and                                 :
                                            :
SHEET METAL WORKERS' LOCAL 19               :
1301 South Columbus Boulevard              :
Philadelphia, PA  19147                     :
                                            :
        and                                 :
                                            :
GARY MASINO, TRUSTEE                        :
SHEET METAL WORKERS' LOCAL 19               :
BENEFIT FUNDS                               :
1301 South Columbus Boulevard              :
Philadelphia, PA  19147                     :
                                            :
                        Plaintiffs,         :
                                            :
        v.                                  :
                                            :
CAMDEN MECHANICAL LLC                       :
1995 Ferry Avenue                          :
Camden, NJ  08104                          :
                                            :
                        Defendant.          :

## COMPLAINT

### The Parties

1.      Plaintiffs, Sheet Metal Workers' Health & Welfare Fund of Local No. 19, Sheet

Metal Workers' Pension Fund of Local No. 19, Sheet Metal Workers' Annuity Fund of Local No.

19, Sheet Metal Workers' Vacation Fund of Local No. 19, Sheet Metal Workers' Supplemental

Unemployment Benefit (S.U.B.) Fund of Local No. 19, Sheet Metal Workers' Joint

Apprenticeship Fund of Philadelphia and Vicinity, (hereafter collectively, "Local 19 Funds") are

employee benefit plans pursuant to Section 3(3) of the Employee Retirement Income Security

Act (hereafter, "ERISA"), 29 U.S.C. Section §1002(3), with their principal office located at 1301

South Columbus Boulevard, Philadelphia, Pennsylvania 19147.

2.      Plaintiff, Sheet Metal Workers' International Training Institute is an employee benefit plan pursuant to Section 3(3) of ERISA, 29 U.S.C. Section §1002(3), with its principal office at 601 North Fairfax Street, Suite 600, Alexandria, Virginia 22314, (hereafter, "ITI", and collectively hereafter with the aforementioned Local 19 Funds, the "Plaintiff Funds"). Plaintiff Funds are due and owing the relief sought from Controlled Temperature Systems, (the "Defendant") as set forth below.

3.      Plaintiff, Sheet Metal Workers' Local No. 19 ("Plaintiff Union"), is a labor organization within the meaning of Section 2(5) of the Labor Management Relations Act of 1947 (hereafter, the "LMRA"), as amended, 29 U.S.C. §152, with its principal office located at 1301 South Columbus Boulevard, Philadelphia, Pennsylvania 19147. Plaintiff Union brings this action on its own behalf and on behalf of its members who are participants in and beneficiaries of Plaintiff Funds.

4.      Plaintiff, Gary Masino, a trustee of the Plaintiff Funds, acts as a fiduciary on behalf of Plaintiff Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), for the purposes of collecting delinquent contributions, and brings this action in such capacity on behalf of the Plaintiff Funds.

5.      Defendant is a company doing business at 1995 Ferry Avenue, Camden, NJ 08104.

6.      Defendant is engaged in commerce within the meaning of Section 2(6) of the LMRA, as amended, 29 U.S.C. Section 152(6), and has employed members of Plaintiff Union pursuant to collective bargaining agreement(s) in the Commonwealth of Pennsylvania.

7.      Defendant is an Employer within the meaning of Section 2(2) and Section 301 of the LMRA, as amended, 29 U.S.C. Section 152(2) and Section 185; and Sections 3(5) and 515 of

the ERISA, 29 U.S.C. Section 1002(5) and Section 1145.

Jurisdiction & Venue

8.     Jurisdiction in the District Court is proper pursuant to Section 301 of the LMRA, as amended, 29 U.S.C. Section 185, in that Defendant is an Employer within the meaning of the LMRA, and has been, and continues to be, a party to collective bargaining agreement(s) which form the basis of this litigation; and 28 U.S.C. Section 1337, providing for original jurisdiction in civil actions that arise out of an Act of Congress regulating commerce.

9.     Jurisdiction of the District Court is also proper pursuant to Section 502 and Section 515 of ERISA, 29 U.S.C. §§1132 and 1145.  The Eastern District of Pennsylvania is the proper venue under ERISA Section 502(e)(2), 29 U.S.C. §1132(e)(2), because the Plaintiff Funds are administered in this judicial district.

Cause Of Action

10.     Plaintiff Union and Defendant are parties to a collective bargaining agreement(s), which requires that the Defendant make certain contributions on a timely basis to the Plaintiff Funds and remit certain payments to the Plaintiff Union.

11.     Defendant, like all other contributing employers to Plaintiff Funds, is required to submit monthly reports accurately setting forth the hours worked by employees covered under the collective bargaining agreement(s), and to remit contributions to Plaintiff Funds, at rates commensurate with those required pursuant to the collective bargaining agreement(s), for all hours worked.  The collective bargaining agreement(s) further note that liquidated damages and interest shall be assessed to untimely and/or unpaid fringe benefit contributions until the employer cures its delinquency.  Notwithstanding obligations contained in said collective bargaining agreement(s), Defendant has failed to timely remit employees' required fringe benefit contributions.  A copy of the collective bargaining agreement, in relevant part, is attached hereto

4

as Exhibit A.

12.     Defendant has employed workers for whom it failed to remit the required benefit contributions on time for the periods of May 2017 through October 2017, thus resulting in an estimated obligation of approximately **$96,101.14** for the liquidated damages and interest that has accrued to date due to Defendant's late remittances of its benefit contribution obligations to the Plaintiff Funds.

13.     Payment of timely benefit contributions to Plaintiff Funds are critical, as those contributions are utilized to supply members of the Plaintiff Union, including those employed by the Defendant, and their beneficiaries, presently with health coverage and pension credits that will be paid upon member retirement in the future.  Any failure to remit contributions timely by the required due date set forth in the relevant collective bargaining agreement(s) and/or delinquency policy can cause significant damage to the Plaintiff Funds' ability to provide member benefits.  See Exhibit A; see also, a copy of the Plaintiff Funds' Delinquency Policy is attached hereto as Exhibit B.

14.     These amounts may also change as the Defendant may make partial payments and/or fails to make one or more payments due as a result of additional work performed under the collective bargaining agreement(s).

15.     Defendant has been notified of its delinquencies, but has failed or refused to make appropriate and timely payments as required.  This failure constitutes a willful derogation of the Defendant's responsibilities to the Plaintiff Union, the Plaintiff Funds and their employees/participants.  A copy of Plaintiffs' Counsel Notice to Employer dated December 21, 2017 is attached hereto as Exhibit C.

16.     Plaintiffs are entitled to a provision permitting immediate registration in another District of any judgment entered in this action.

**WHEREFORE**, Plaintiffs request this Honorable Court to grant judgment against the Defendant and in favor of the Plaintiffs and to award relief as follows:

       a.      Judgment in the amount of **$96,101.14**, or such other amount as may be due and owing when this cause of action reaches judgment;

       b.      Reasonable counsel fees, interest and costs of suit, including costs of audit;

       c.      Injunctive relief ordering the Defendant to remit employer reports, contributions, and other required payments in a timely fashion;

       d.      Liquidated damages as provided by the applicable collective bargaining agreement(s) and by Section 502 of ERISA; and

       e.      Other relief as the Court deems just and proper.

                                 **SPEAR WILDERMAN, P.C.**

                               BY: _____

                               MARTIN W. MILZ
                               SYRETTA J. MARTIN
                               Counsel for Plaintiffs
                               230 South Broad Street, Suite 1400
                               Philadelphia, PA  19102
                               (215) 732-0101

Dated:  February 15, 2018

# EXHIBIT "A"

# AGREEMENT

*Between*

# SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS, LOCAL UNION No. 19

## PHILADELPHIA AREA

1301 South Columbus Boulevard
Philadelphia, Pennsylvania 19147

*And*

CAMDEN MECHANICAL LLC
EIN # 47-3590564
Contact: Joe Esposito
1995 Ferry Ave
Camden, NJ 08104
Phone: 856-676-0500
Email: jesposito@camdenmechanical.com

#2019.

Changed name- AKA Campano Mechanical

## EFFECTIVE

**MAY 1, 2016 through APRIL 30, 2019**

# TABLE OF CONTENTS

| SUBJECT | PAGE | ARTICLE |
|---|---|---|
| Apprentice & Training | 14 | XIII |
| Apprentice Wage Scale | 14 | XIII, Sec 5 |
| Asbestos | 15 | XIV, Sec 2 |
| Balancer's Stamp | 2 | II, Sec 7 |
| Bonding | 12 | XII, Sec 16-21 |
| Credit Union | 3 | III, Sec 7 |
| Election Day | 5 | VII, Sec 1(a) |
| Employer Association | 2 | II, Sec 14 & 15 |
| Employer Responsibilities | 1 | II |
| Funds | 9 | XII |
| Funds: Payment Rules | 10 | XII, Sec 12 & 13 |
| General Foreperson, Foreperson, Wages & Rules | 6 | IX, Sec 2-7 |
| Grievance Procedures | 18 | XX |
| Hiring Hall | 3 | IV |
| Holidays | 5 | VII |
| Hours of Work | 4 | V |
| H.V.A.C. Shops | 18 | XIX, Sec 4 |
| Job Reporting | 1 | II, Sec 3 & 4 |
| League for Political Education | 10 | XII, Sec 3 |
| Limited Apprentices | 7 | IX, Sec 8 |
| Overtime | 5 | VI |
| Owners & Owner Members | 18 | XIX |
| Owner-Members Funds | 10 | XII, Sec 2(b) |
| Picketing | 16 | XV |
| Pinpointing, Specialty Agreements & Addendums | 16 | XVI |
| Prevailing Wage Surveys | 3 | II, Sec 18 |
| Purchasable Items | 2 | II, Sec 9 |
| Reciprocal Agreements | 12 | XII, Sec 21 & 22 |
| Room & Board | 9 | XI, Sec 7 & 8 |
| Rules of Payment for Wages | 7 | X |
| Safety, Tools, & Conditions | 15 | XIV |
| SUB Fund | 11 | XII, Sec 14 |
| Scope of Work | 1 | I |
| Severability | 19 | XXI |
| Shift Work | 6 | VIII |
| Sketcher's Stamp | 2 | II, Sec 6 |
| Stewards | 17 | XVII, Sec 2 |
| Sub-Contracting | 2 | II, Sec 5 & 8 |
| Successor Clause | 3 | II, Sec 21 |
| Term of Agreement | 19 | XXII |
| Territory Covered | 1 | Preamble |
| Tool Loss | 16 | XIV, Sec 11 |
| Travel Expenses, Zones | 9 | XI |
| Truck Identification | 3 | III, Sec 19 |
| Union Membership | 3 | III, Sec 1 |
| Union Security | 3 | III |
| Wage, Deduction, & Contribution Schedule | 13 | XII |
| Wages | 6 | IX |
| Work Assessment/Service Fee | 3 | III, Sec 5 |
| Work Preservation Clause | 2 | II, Sec 12 |

## UNION AGREEMENT

### Sheet Metal, Roofing, Ventilating and Air Conditioning Contracting Divisions of the Construction Industry

This Agreement is entered into this 1st day of May 2016 by and between Local Union No. 19 of the International Association of Sheet Metal, Air, Rail and Transportation Workers of Philadelphia, Pennsylvania and Vicinity, hereinafter referred to as the Union, and the Sheet Metal Contractors Association of Philadelphia and Vicinity, acting in the capacity of a Multi-Employer Bargaining Agent, hereinafter referred to as the Employer.

Except as otherwise specified, the territory covered by this Agreement includes, in their entirety, the following counties: Philadelphia, Bucks, Montgomery, Chester and Delaware Counties in Pennsylvania and Camden, Gloucester and Salem Counties in New Jersey.

## ARTICLE I

### Scope of Work

**Section 1.**   This Agreement covers the rates of pay, and conditions of employment of all Employees of the Employer engaged in but not limited to the (a) manufacture, fabrication, assembling, handling, erection, installation, dismantling and conditioning, adjustment, alteration, repairing and servicing of all ferrous or nonferrous metal work and all other materials used in lieu thereof and of all air-veyor systems and air handling systems regardless of material used, including the setting of all equipment and all reinforcements in connection therewith; (b) all lagging over insulation regardless of gauge or material and all duct linings; (c) testing, adjusting and balancing and the commissioning of all air-handling equipment and duct work; (d) the preparation of all shop and field sketches for HVAC and architectural sheet metal work used in fabrication and erection, including those taken from original architectural and engineering drawings or sketches; (e) pick off – the transformation, manual or electronic, from shop drawings to shop fabrication of ductwork and related items; (f) layout and cutting of duct openings through walls, ceilings, floors and roof decks; (g) duct cleaning; (h) service work on HVAC equipment; and (i) all other work included in the jurisdictional claims of Sheet Metal Workers' International Association.

**Section 2.**   It is expressly included herein, for the purpose of indicating more specifically, but not by any means limiting hereto, that supplementary to Section 1 of this Article, this Agreement also covers the furnishing, handling, setting, erecting, installation, assembling, dismantling, removal, adjustment, alteration, reconditioning, repairing, and servicing of all fans, filters of all types, blowers, sheaves, belts and guards of all kinds, plenums including prefabricated insulated casings and air chamber panels, with or without other equipment, louvers, screens, registers, grilles, duct sox(s), diffusers of all kinds, including those in connection with lighting fixtures and ceilings, dampers of all kinds, smoke detectors, sound traps, mixing boxes, attenuators, air blenders, access doors related to air handling systems, dryers, sprayers, industrial ovens and related work, power and gravity ventilators, acoustical material within duct work, dust collectors and recovery systems, bag houses, breeching, hoods, convector and radiator and similar enclosures and covers, with or without backs, flexible tubing and connections thereto, and all such or similar equipment involved in or in any way related to air handling systems, pneumatic banking equipment, walk-in boxes, lockers and shelving, toilet partitions, kitchen equipment, chutes of all types, solar panels, metal ceilings, sound rooms, prefabricated environmental rooms, roof curbs, imbedments, installation and draw-

ings for unistruts and all supports for sheet metal in connection with power plant work, energy auditing, flashing, coping, fascia, soffits, gutters and downspouts, termination bar, column covers, skylights, metal siding,  composite panels,  supports, studs, sheathing, drywall and related materials, metal roof deck and all other architectural sheet metal work, all work on metal roofs including but not limited to plywood, insulation, pipe collars, ice shields, vapor barriers, radon ventilating exhaust systems, system powered air controls, gauges and tubing, magnahelic gauges, fan powered VAV boxes, all power rigging, lead abatement, animal boxes, all computer and clean room air systems including floors, walls, ceilings and other architectural sheet metal work, metal wall protection systems, operating of any equipment or new technology which has as its essential purpose replacing or changing those jobs or procedures traditionally performed by Sheet Metal Workers, and to all other sheet metal work covered by this Agreement and by the jurisdictional claims of the Sheet Metal Workers' International Association.

**Section 3.**   Flexible metal or fabric hose shall not be more than twelve feet zero inches (12'0") in length from point to point on any one branch line.

**Section 4.**   If an Employer has been found to initiate the exclusion of any work covered in this Agreement, which was included in the bid documents provided to that Employer by their customer, that Employer will be in violation of this Agreement.

## ARTICLE II

### Employer Responsibilities

**Section 1.**   The Employer agrees that none but Journeyperson Sheet Metal Workers and Registered Apprentices, covered by this Agreement shall be employed on any work described in and covered by this Agreement.

**Section 2.**   The Employer shall exert every possible effort to secure all work included in and covered by this Agreement. If an Employer accepts any job, by contract or otherwise, and all of the work included and covered by this Agreement or considered as normally part of the job involved is not included therein, Employees covered by this Agreement and the Union shall be free to refuse to perform any work on or for any such job and should they refuse, they shall not be in violation of this Agreement.

**Section 3.**   The Employer agrees to report to the Union the name and address of all jobs contracted for in excess of five thousand dollars ($5,000.00) by the 15th of the month for jobs contracted for the previous month. Such report shall be in the form of a "Letter of Assignment" as developed by the Sheet Metal Industry Advancement Committee. In the event that no jobs are contracted for, the Employer agrees to report same to the Union by the 15th of the month.

Employers are requested to report, in the form of "Letter of Assignment" all jobs contracted for up to five thousand dollars ($5,000.00) by the 15th of the month.

Employers failing to report by the 15th of the month will be in violation of this agreement and shall be subject to the grievance and remedy provisions contained in Article XX of this Agreement.

**Section 4.**   The Employer shall inform the Union on the first day that a sheet metal worker is on site at any new job as described above in section 3.

Agreement. This will not include increased compensation for wages or fringe benefits.

## ARTICLE XI

### Travel Expenses

**Section 1.** When employed in a shop or on a job within the limits of Zone 1, hereafter established, Employees shall be governed by the regular working hours specified herein. They shall provide for themselves necessary transportation within said limits, from home to shop and return at starting and quitting times and the Employer shall provide or pay for all necessary additional transportation during working hours.

**(a)** Each Employee traveling from one job to another during the course of the regular work day shall be paid all public transportation fares, tolls, etc., for all such trips in addition to the travel time. Each Employee starting work in one zone and required to move to another zone during the day, where they are located at quitting time shall be paid one-half (½) the allowance for both zones.

**(b)** The Employer shall provide or pay for transportation during working hours if the Employee uses their personal automobile for such transportation, they will be compensated at a minimum rate equal to the then current Internal Revenue Service (IRS) allowance for deduction business miles driven for each mile so traveled.

**Section 2.** Travel Expense Zones are hereby established as follows, the City Hall of Philadelphia is the central point of all radius lines:

Zone 1 - shall be all of the City of Philadelphia and the area within a fifteen (15) mile radius;

Zone 2 - shall be the area outside Zone 1 and within a twenty (20) mile radius;

Zone 3 - shall be the area outside Zone 2 and within a thirty (30) mile radius;

Zone 4 - shall be the area outside Zone 3 and within a forty (40) mile radius;

Zone 5 - shall be the area outside Zone 4 and within a sixty (60) mile radius.

Zone 6 – shall be the area outside Zone 5 and within a seventy-five (75) mile radius.

**Section 3.** Each Employee shall be paid, in addition to wages, the following travel expenses for each day employed in any of the above Zones. Said expense allowances are for ordinary and necessary expenses, incurred or reasonably expected to be incurred, in the business of the Employer either as advances or reimbursements:

Zone 1 - no expenses;
Zone 2 - no expenses;
Zone 3 - $2.40 per day;
Zone 4 - $4.80 per day;
Zone 5 - $7.20 per day.
Zone 6- $15.00 per day, plus  conveyance as described in Section 6 below, including gasoline and tolls, and excluding paid travel time.

For all work outside Zone 6, Board and Room expenses shall be paid. These expense allowances are provided specifically for the territory covered by this Agreement and for Employees

covered by this Agreement. Employees sent by the Employer to perform work outside the territory covered by this Agreement, shall be paid not less than the appropriate expense noted above, but in any case, not less than the appropriate expense established, for traveling to and from the job site, in the Collective Bargaining Agreement, covering the area in which the job is located plus all traveling time so required.

**Section 4.** For work performed at a job site so located that parts of the job are on both sides of a zone line, the expense paid shall be the equivalent of one-half (½) of the sum of the expense of both zones.

**Section 5.** Whenever travel time is required it shall be paid for at each Employee's current wage rate whether within or outside the regular working hours. Wherever and whenever travel time is payable, Worker's Compensation Insurance Coverage shall be provided for each and all Employee(s).

**Section 6.** Employees shall not be required to travel in conveyance furnished by the Employer. The Union, however, at its discretion, may approve such use of Employer's conveyance provided it is clean, safe and comfortable and that each Employee so transported shall have full insured coverage for any and all costs and losses resulting from injury while so traveling and a mutually satisfactory pick-up place is established and travel time is paid.

When the Employer furnishes an automobile, which may be a sedan, station wagon or an enclosed auto van to an Employee for use related to their business and for said Employee's travel to and from their home and place of work, the requirements of the zone map reimbursements shall not apply for the Employee directly involved. The Employer shall pay for and be responsible for all costs related to the use of the vehicle(s).

**Section 7.** Board and Room expense shall be paid in full but in any case not less than two hundred fifty dollars ($250.00) for each full week. Board and Room at not less than fifty dollars ($50.00) per day shall be paid when less than a week is involved. In either case, the above shall be paid regardless of whether or not a full day's work is performed, for legal holidays and for days when weather or other reasons beyond the control of the Employee prevent working.

**(a)** It is specifically agreed that each Employee employed in Board and Room areas, shall be paid travel time and expense for whatever public transportation facilities are best available for reaching the job location at the beginning of the job and the same upon their return at the completion of any intermittent period of employment on such jobs. Under no conditions, whatsoever, shall the ownership of an automobile be a condition governing whether or not an Employee will be hired or fired or laid off.

**Section 8.** When only one day's work is involved in a Board and Room area, the Board and Room daily payment need not be paid unless the Employee is required to stay overnight. If, however, an Employee can reasonably go and return on the same day, travel time and expenses shall be paid to them in addition to the pay for hours on the job, from the time they leave home until they return to their home.

## ARTICLE XII

### Funds

**Section 1.** All Funds are calculated on the basis of hours of wages paid. Hours of wages paid shall mean the number of hours resulting from dividing gross wages by the Employee's

regular time hourly wage rate. Travel time pay should be included as hours of wages paid.

**Section 2.**    The Employer agrees to make deductions for the Sheet Metal Workers' Vacation Fund of Local Union No. 19, the Sheet Metal Workers' Work Assessment-Service Fee of Local Union No. 19 and Viriva Community Credit Union.

**(a)**    The Employer agrees to make contributions to the Sheet Metal Workers' Annuity Fund of Local Union No. 19, the Sheet Metal Workers' Health and Welfare Fund of Local Union No. 19, the Sheet Metal Workers' Pension Fund of Local Union No. 19, the Local Union No. 19 Supplemental Unemployment Benefit (SUB) Fund, the Sheet Metal Workers' Joint Apprenticeship Fund of Philadelphia and Vicinity and the Industry Fund of the Sheet Metal Contractors Association of Philadelphia and Vicinity, and the International Training Institute for the Sheet Metal and Air Conditioning Industry (iTi).

**(b)**    Owner-Members shall make the above deductions and contributions to the various funds (with the exception of the Local Union No. 19 SUB Fund) for a minimum of forty (40) hours per week; subject, however, to the following: an Owner-Member may execute an agreement with the Local Union opting out of making contributions on his or her behalf to the Pension, Welfare, Annuity and Vacation Funds. Thereafter, the Owner-Member shall not be allowed to perform the traditional activities and duties of a Sheet Metal Journeyperson that are covered by this Agreement, except as permitted by Article XIX, and shall enjoy no benefits from the Welfare and Vacation Funds and they shall accrue no additional benefits from the Pension and Annuity Funds. An Owner-Member who has opted out of the foregoing funds may rescind his or her agreement to opt out only with the approval of the Local Union and the Trustees of the Funds. A bargaining unit member who ceases to be an Owner – Member shall have contributions made on his or her behalf without regard to this provision of the Agreement.

**(c)**    Deductions and Contributions to the Funds shall be in the amounts specified in the Hourly Wage, Deduction and Contribution Schedule effective May 1, 2016 through April 30, 2017, as adjusted by allocation of the beneficial wage increases effective May 1, 2017 and May 1, 2018.

**Section 3.**    The Employer and the Union agree to be bound by the Agreements and Declarations of Trust, establishing said Funds, as if included herein and Amendments thereto as may be made from time to time and hereby designate as their representatives on the Board of Trustees as named, together with any successors who may be appointed, pursuant to said Agreement.

**Section 4.**    The Employer agrees to abide by and comply fully with all rules, regulations and requirements established by the Funds within the powers and authorities under the Trust Agreements and this Agreement.

**Section 5.**    The Employer agrees to furnish the respective Trustees with records, setting forth the names, classifications, social security numbers of the Employees and number of hours worked by and wages paid to each Employee during the period or periods accounted for and, the Funds shall have the right, at any time, to inspect or audit all Employer's records related to the herein provided payment.

**Section 6.**    The parties hereto agree that should the amount of payment by the Employer, as provided in this Article XII, at any time later be reduced by mutual agreement of both parties hereto, the amount by which it is reduced shall immediately be added to the then current and subsequent wage rates established in this Agreement.

**Section 7.**    Fund contributions shall not be duplicated.

**Section 8.**    The money herein agreed to be paid to the Vacation Fund is wages earned by Employees and shall be deducted from wages after taxes have been withheld. The Employer hereby agrees and affirms that all vacation wages withheld and not turned over to the Vacation Fund shall have precedence as wages and together with other wages due before any and all other debts, obligations or other financial requirements the Employer may or does have, except as otherwise required by applicable law.

**Section 9.**    It is specifically agreed that, if the Employer pays to another Fund having for its purpose and intent, and does actively pursue such purposes and intent, the advancement and protection of the industry in a manner similar to the Industry Fund and does pay to the other Fund for hours of wages paid Sheet Metal Employees in accordance with this Agreement and said Employees benefit by the activities of such Fund, the Employer may be excused from paying to this Fund. The Union shall have the sole right to determine whether or not such exception may be granted.

**Section 10.**    No part of the Funds or property of the Industry Fund may be used, spent, loaned or allocated to or for any political party or candidate for public office or for the use of any person holding public office or for any activity whatsoever that may or does have for its purpose or intent, or have the effect of causing or resulting in, anything considered by the Union to have harmful effect on the Union.

**Section 11.**    Failure to comply with the provisions and requirements of this Agreement related to the payment of money to any and all Funds established by and included in this Agreement and wages in the manner and to the extent required, shall be considered as and shall constitute a violation of this Agreement of especially serious nature and, therefore, special additional provisions are herein provided to compensate, therefore, and to establish procedures and requirements related hereto.

**Section 12.**    Because of the serious nature of failure to furnish the required reports and to make payment therewith within the required time limit(s), the following rules are hereby agreed to:

**(a)**    Reports and payments or contributions shall be made for each calendar month on or before the fifteenth (15th) of the next following month and shall include coverage of all work performed from the last day reported in the previous month up to and including the very last payroll week of the month being reported. Postmark date shall be acceptable evidence of compliance with date requirements.

**(b)**    Reports and payments or contributions made after the fifteenth (15th) of the month following the month for which they are due, shall include an additional five percent (5%) of the gross amount due each Fund for each month thereafter during which they remain unpaid, provided however, said late charge shall not be assessed if:

    **1.**    The Employer has not been late in making any of their payments in the previous twelve (12) months; and,

    **2.**    The Employer makes the full late payment within ten (10) days of the due date; and,

    **3.**    The Employer pays the Funds interest at the prime rate as published by Wells Fargo Bank for the month in which the delinquency occurred, on the total contribution for the period from the due date to the date of actual payment.

For the purposes of this Section, any month shall be considered as from the fifteenth (15th) of one month to the fifteenth (15th) of the next following month.

(c)   If reports and/or payments or contributions remain unpaid or delinquent on or after the twenty-fifth (25th) of the month following the month for which they are due, the Union may resort to the remedies set forth in this Article XII, Section 14 (e). Should the Union withdraw Employees for this reason, the Employer agrees to pay each and every Employee withdrawn for this reason, full wages and expenses for each hour of wages lost, until all reports and all payments, contributions and premiums due are made and the appropriate deposits in escrow are made or bond presented as required, but in any event, for not more than sixteen (16) hours of wages, in addition to the required reports and payments, contributions and premiums made.

(d)   Should the Trustees of the Funds and/or the Union enter suit in a court of law to enforce compliance with the provisions and requirements of this Agreement related to reports and payments or contributions to all Funds and wages, the Employer agrees to pay the costs including counsel fees and the costs of any audits of such Employer's records, required or requested by the Trustees.

**Section 13.**   The Employer agrees to make payments to the Local Union No. 19 Supplemental Unemployment Benefit Fund for each Employee covered by this Collective Bargaining Agreement, as follows:

(a)   For each hour for which a Journeyperson, Foreperson or General Foreperson, subject to the Collective Bargaining Agreement receives pay from the Employer, the Employer shall make a total contribution to the Sheet Metal Workers' Local Union No. 19 Supplemental Unemployment Benefit Fund equal to three percent (3%) of the negotiated Journeyperson wage rate plus contributions paid by such Employer on behalf of such Employee to the Pension, 401(h), Annuity and Health and Welfare Fund

For each hour for which a 1st or 2nd period Apprentice, subject to the Collective Bargaining Agreement receives pay from the Employer, the Employer shall make a total contribution to the Sheet Metal Workers' Local Union No. 19 Supplemental Unemployment Benefit Fund equal to One Dollar ($1.00).

For each hour for which a 3rd through 8th period Apprentice and a Limited Apprentice, subject to the Collective Bargaining Agreement receives pay from the Employer, the Employer shall make a total contribution to the Sheet Metal Workers' Local Union No. 19 Supplemental Unemployment Benefit Fund equal to three percent (3%) of the negotiated 8th period apprentice wage rate plus contributions paid by such Employer on behalf of such Employee to the Pension, Annuity and Health and Welfare Fund

(b)   The Employer hereby agrees to become a party to the Local Union No. 19 Supplemental Unemployment Benefit Fund and Declaration of Trust, and agrees to be bound by all the terms and provisions of said Agreement. The Employer further agrees irrevocably to designate as its representative on the Board of Trustees of the Fund such Trustees as are named in the Fund's Agreement and Declaration of Trust as Employer Trustees together with their successors selected in the manner provided in the said Agreement and agrees to be bound by all action taken by said Employer Trustees pursuant to the Agreement and Declaration of Trust.

(c)   The contribution made to the Fund shall be used by it to provide benefits to be payable to eligible Employees in accordance with the provisions of the Plan of the Fund.

(d)   It is agreed that to the extent possible, such Plan applicable to the Employees of the Employer will qualify for approval with appropriate government agencies, so as to enable the Employer to treat contributions to the Fund as a deduction for income tax purposes; to treat such contributions as not being "wages" for purposes of Federal Unemployment Tax, Federal Insurance Contribution Act Tax, or Collection of Income Tax at Source of Wages under Subtitle C of the Internal Revenue Service Code; and, not be required to include such contributions for purposes of the Fair Labor Standards Act in the regular rate of pay of an Employee.

(e)   If the Employer fails to make contributions to the Fund within ten (10) days after the date required by the Trustees, the Local Union, in addition to any rights the Trustees may have, shall have the right within forty-eight (48) hours written notice to take whatever steps are necessary to secure compliance with this Agreement, any provisions of this Collective Bargaining Agreement, including the no-strike clause, to the contrary notwithstanding. It is expressly understood that the Employer's liability for payment hereunder shall not be subject to the grievance or arbitration procedure of the Collective Bargaining Agreement and that the no-strike clause, if any, shall not prohibit any action the Union chooses to take to compel payment of contribution.

**Section 14.**   The Employer agrees to provide to the Funds and the Union an indemnity bond guaranteeing that Employees and the Funds will be paid amounts due to Employees and Funds as and when the Employer fails to meet and comply with the provisions and requirements of this Agreement related to wages and payments or contributions to the Funds. In the event an indemnity bond is not obtainable by the Employer, the Employer may provide the Funds and the Local Union with an irrevocable letter of credit. Said letter of credit shall not be canceled without sixty (60) days' notice to the Funds Office and the Local Union.

The bond and/or irrevocable letter of credit shall be issued by a reputable bonding company and/or bank and shall be acceptable to the Union and the Trustees of the Funds, and shall be at all times in an amount meeting the requirements of the following schedule or formula:

If the total of two (2) weeks of gross wages (before vacation) plus nine (9) weeks of contributions and payments due the Funds (excluding payments to the Vacation Fund) (hereinafter referred to as the "Bond Amount") equals or is less than $10,000 the employer's bond shall be for $10,000, Each Employer's bond shall increase in increments of $10,000 as its Bonded Amount exceeds the prior amount of the Employer's bond by One Dollar ($1.00). For example if the Bonded Amount becomes $10,001 the bond shall be for $20,000, when the Bonded Amount becomes $20,001 the bond shall be for $30,000, and so forth.

(a)   Effective July 1, 2016 the maximum bond requirement shall be $480,000

(b)   Effective July 1, 2017 the maximum bond requirement shall be $520,000

(c)   Effective July 1, 2018 the maximum bond requirement shall be $560,000

**Section 15.**   Bonds shall be provided for a period of not less than one (1) year and be renewable or continuous until revision of the amount necessary to satisfy the herein schedule or formula as required, at which time, the new bond shall be furnished for a like period.

The amount of the bond required shall be determined by the application of the above formula to annual payments made or due for the annual period ending with April 30th of any year. If

a change in the amount is required, the change shall take place immediately.

If the Employer has no record of previous employment or contributions to the Funds and is required to furnish a bond, it shall be for not less than $5,000.00 or an amount established by the Union to adequately cover payments expected or estimated to be required in view of anticipated employment. Such estimates shall be related to the amount of money expected to be due for wages and contributions on a basis of two thousand dollars ($2,000.00) per Employee and the resulting figure shall be related to the bond coverage formula as described in Section 16 of this Article XII.

**Section 16.** Bonds shall be written to provide for payments covering wages and the several Funds in the following order. When money remains after satisfying the requirements of the first, then the balance shall be allocated to each of the others in the order shown, to the extent possible:

**First,** the full amount due for wages. (wages include credit union deductions, work assessments and PAL check-off).

**Second,** the full amount due to the Vacation Fund.

**Third,** the full amount due to the Annuity Fund.

**Fourth,** the full amount due to the Welfare Fund.

**Fifth,** the full amount due to the Pension Fund.

**Sixth,** the full amount due to the Local Union No. 19 SUB Fund.

**Seventh,** the full amount due to the Apprenticeship and Training Fund.

**Eighth,** the full amount due to the Industry Fund.

**Ninth,** the full amount due to the International Training Institute for the Sheet Metal and Air Conditioning Industry.

**Section 17.** The posting of the bond with the Funds shall not exempt the Employer from liability to make reports and full payment of amount due all Funds, if the bond does not meet full amounts due or the bonding company does not pay, or, if the Union and the Trustees are required to sue the bonding company. Nor does it exempt the Employer from meeting and complying with all other requirements and provisions of this Agreement relating to the Funds and Wages.

**Section 18.** The Employer agrees to have the required bonds, in duplicate, in the possession of the Funds within thirty (30) days immediately following the effective date of this Agreement.

Should the Employer fail to produce the required bond within the prescribed time period, said Employer shall be required to make all reports and/or payments or contributions on a weekly basis. These reports and/or payments or contributions shall be paid on the same day that wages are paid and shall cover the same payroll period. Should the Employer fail to meet the requirements of this Section, the Union may resort to the remedies set forth in this Article XII, Section 14 (e) on the first working day following the day on which all reports and/or payments or contributions are due.

(a) Employers who must report on a weekly basis and fail to mail the benefits on the day that wages are paid, shall be assessed liquidated damages at the rate of one and one quarter percent (1¼%) of the gross amount due each Fund for each week thereafter during which they remain unpaid.

(b) Where Employers are required to pay weekly because they do not have a bond, and have not maintained 12 consecutive months of on time fringe benefit payments, there shall be an administrative fee charged not greater than 0.0025 (one quarter of one percent) of the value of the fringe benefit contributions due weekly as determined by the Trustees. The fee is to be paid with the weekly contributions until they maintain 12 consecutive months of on time payments. New Employers will be considered on time.

**Section 19.** Employers, whose principal office or place of business is located outside of the area covered by this Agreement, employing Employees covered by this Agreement within its territorial coverage or Employers employing Employees represented by the Union and for short periods not exceeding eight (8) weeks may, in lieu of posting bond, with the approval of the Union:

(a) Deposit with each Fund cash or certified check in an amount ranging from a minimum of five hundred dollars ($500.00) to three thousand dollars ($3,000.00) to guarantee reports and payments due the Funds and Wages. The actual amounts to be deposited shall be those required by the Union, and shall be related to the number of Employees employed and the anticipated length of the job. Upon completion of the job, should the Employer fail to meet the requirements and provisions of this Agreement, the amount due and unpaid shall be deducted and kept by the Funds and the balance, if any, shall be returned to the depositor or, if the Employer has complied in full, the amount deposited shall be returned, upon request, at the earliest opportunity, following the satisfaction of all requirements.

(b) Make payments or contributions to all Funds each time wages are paid to Employees on the job, but separate from wages, in a manner prescribed by the Union.

**Section 20.** The Employer agrees that, when performing work in the territory of other Local Unions of the Sheet Metal Workers' International Association, the terms, conditions, and requirements of the then existing Agreement between the appropriate Local Union and Employers in that area related to Funds and as established therein shall be complied with and that failure to do so will permit the Union to take whatever action it deems appropriate to assure compliance.

**Section 21.** The Employer agrees that the Trustees of any and all Funds herein provided for may, at their discretion, enter into reciprocal agreements with other similar Funds, in any manner they may determine to protect and advance the interest of Employees covered by these or other Funds of similar nature.

**Section 22.** The undersigned hereby agrees to accept and confirm as representatives and members of the Board of Trustees the following:

| | |
|---|---|
| Gary Masino | Edmund Bransfield |
| Thomas Klingenberg | Ernest J. Menold |
| Bryan Bush | Matthew Sano |
| Patrick Doyle | Roeland Hoeke |

These representatives, together with their successors selected in the manner provided in said Trust Agreements, are hereby authorized to and shall represent the Union and the Employer and other Employers, partied to this or similar Agreements in the administration of the Health and Welfare, Annuity, Pension, Vacation and SUB Funds.

## ARTICLE XXI

### Severability Clause

**Section 1.** It is not the intention of the parties hereto to violate any existing Federal, State or Municipal Law or legal regulation. However, should any article, section, paragraph, sentence or clause within this Agreement be held to be illegal or in contravention or violation of any applicable existing law by a court of competent jurisdiction, such part or parts shall immediately be held to be inoperative under this Agreement. All other parts hereof shall continue to remain in full force and effect for the duration of this Agreement. It is the intent of both parties, hereto, that those parts of this Agreement not found to be illegal would have been agreed to and included herein whether or not the others were included.

## ARTICLE XXII

### Term of Agreement

**Section 1.** This Agreement shall become effective on the first day of May, 2016, and remain in full force and effect through the last day of April, 2019, and shall continue in force from year to year after unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of requested reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party.

**Section 2.** Notwithstanding, any other provisions of this Article, an award of the Joint Adjustment Board rendered pursuant to the procedures prescribed in Article XIX of this Agreement, may as a part thereof, direct the cancellation of this Agreement.

The undersigned Employer, having been given a copy of the Collective Bargaining Agreement between Local Union No. 19 of the Sheet Metal Workers' International Association of Philadelphia, Pennsylvania and Vicinity and the Sheet Metal Contractors Association of Philadelphia and Vicinity, effective May 1, 2016, hereby agrees, having read or having the opportunity to read such Agreement, based upon the mutual covenants and considerations contained therein and for the purposes of collective bargaining set forth therein, and intends to be legally bound to by all terms and conditions of said Collective Bargaining Agreement.

**Section 3.** By execution of this Agreement the Employer authorizes the Sheet Metal Contractors Association of Philadelphia and Vicinity (SMCA) to act as its collective bargaining representative for all matters relating to this Agreement. The parties agree that the Employer will hereafter be a member of the Multi-Employer bargaining unit represented by said Association unless this authorization is withdrawn by written notice to the Association and the Union at least one hundred and fifty (150) days prior to the then current expiration date of this Agreement.

**Sheet Metal Workers' International
Association Local Union No. 19**

Gary J. Masino

5/1/16
Date

Employer

5/11/17
Date

5/11/17

-19-

# EXHIBIT "B"

# SHEET METAL WORKERS BENEFIT FUNDS
## OF LOCAL UNION NUMBER 19
## POLICY FOR COLLECTION OF DELINQUENT
## CONTRIBUTIONS

## I.      STATEMENT OF POLICY

It is the policy of the Board of Trustees ("Trustees") of the Sheet Metal Workers' Benefit Funds of Local Union Number 19 ("Funds") to collect all employer contributions as they come due and to make reasonable, systematic and diligent efforts to identify all amounts to which the Funds have a right and to collect such amounts. In furtherance of this policy, the Trustees have the right to exercise all rights and to obtain all remedies provided for under the Funds governing documents, Collective Bargaining Agreements obligating employees to contribute to the Funds, Employee Retirement Income Security Act of 1974, as amended, ("ERISA") and applicable labor law, including, but not limited to:

1. to audit records of employers to determine whether the proper contributions have been made;

2. to enforce the terms of the collective bargaining agreement obligating employers to contribute to the Funds and to pursue, where appropriate, claims against individual business owners and/or alter egos of contributing employers for payment of delinquent contributions;

3. to compromise and settle claims in accordance with the Funds' governing documents, applicable collective bargaining agreements, this Policy for Collection of Delinquent Contributions ("Policy"), ERISA and the Internal Revenue Code of 1986 as amended;

4. to take any other steps and to perform all other acts that are necessary to collect contributions in a timely manner.

The procedures set forth herein will be followed unless the Trustees determine, in their discretion, that they should be waived in any particular case. All questions regarding the interpretation, intent or application of this Policy and these procedures will be resolved exclusively and finally by the Trustees.

## II.     COLLECTION PROCEDURES

### 1.      Payment Due Date

(a)      For employers that are bonded in accordance with the Collective Bargaining Agreement, contributions must be paid to the Funds no later than the fifteenth (15th) day of the month following the month in which the hours or work gave rise to the obligation to contribute, unless the applicable Collective Bargaining Agreement provides otherwise. If the due date is a Saturday, Sunday or a legal holiday, the monies must be

received by the next business day. For employers who are not bonded, contributions shall be paid on the Friday of the week in which wages are paid for the work or hours that gave rise to the contribution obligation.

**2.    Interest**

If a contribution is delinquent, interest shall accrue on the delinquent amounts from the payment due date until the date the contribution is received by the Funds at the rate set by the Internal Revenue Service pursuant to IRC section 6621.

**3.    Administrative Procedures**

(a)    *Delinquency Notice.* If an employer fails to timely submit a remittance report and/or contribution to the Funds, the Trustees, through the Administrative Office of the Funds, will send a Delinquency Notice to the delinquent employer advising the employer that its report and/or contribution is delinquent, and that it owes, in addition to the principal contribution, any interest and liquidated damages as set forth in the Collective Bargaining Agreement and herein on the principal balance outstanding as of the date of the notice.

(i)    The Fund shall send a Delinquency Notice to employers that remit contributions on a monthly basis ("Monthly Employers") on the twenty-fifth (25th) day of the month in which the delinquent report and/or contribution was due. This letter will be in the form of Exhibit A.

(ii)    The Fund shall send a Delinquency Notice to employers that remit contributions on a weekly basis ("Weekly Employers") on the seventh (7th) day following the date on which the delinquent report and/or contribution was due. This letter will be in the form of Exhibit B.

(b)    *Notice to Employees.* If the delinquent employer fails to deliver to the Funds all reports, contributions, interest, and liquidated damages identified in the Delinquency Notice or enter into a payment agreement with the Trustees by the date specified by said letter, the Funds shall send a notice to all covered employees advising them that their benefits may be affected as a result of employer's delinquency.

(i)    Notice to covered employees employed by Monthly Employers will be sent on the twenty second (22nd) day following the date of the Delinquency Notice. If, following the Delinquency Notice, the employer has failed to contact the Funds to arrange for the resolution of the delinquency, the notice to employees will be in the form of Exhibit C. If, following the Delinquency Notice, the employer has contacted the Funds to resolve its delinquency, but the parties have not reached an agreement, the notice to employees will be in the form of Exhibit D.

(ii)    Notice to the covered employees employed by Weekly Employers will be sent on the fifteenth (15th) day following the date of the Initial Notice. If, following the Delinquency Notice, the employer failed to contact the Funds to arrange for the resolution of the delinquency, the notice to employees will be in the form of Exhibit E. If, following the Delinquency Notice, the employer has contacted the Funds to resolve its delinquency, but, the

parties have not reached agreement, the notice to employees will be in the form of Exhibit F.

(c)    The failure of the Fund to send any of the above-mentioned notices or otherwise follow the procedures set forth in this Policy shall not constitute a defense against a claim by the Funds for delinquent contributions, penalties, interest, or other fees and expenses.

### 4.    Liquidated Damages

(a) Liquidated damages shall be as set forth in the Collective Bargaining Agreement, currently **5%** per month (or any part thereof) for employers that contribute monthly and **1.25%** per week and/or any part of a week, for employers that contribute weekly, limited to a maximum total of **20%** of the principal amount due. In the event the Collective Bargaining Agreement does not establish liquidated damages, the liquidated damages will be owed in an amount equal to the greater of the interest on the contribution calculated at the rate specified in Section II(2) or **20%** of the unpaid contribution.

(b)    Liquidated Damages will not be assessed if the Employer,

(i)    has not been late in making any of its payments in the previous twelve (12) months; and

(ii)    the Employer makes the full late payment within ten (10) days of the payment due date.

### 5.    Referral to Counsel

Following notice, should the contribution not be received by the thirtieth (30th) day following the end of the month in which the contribution was due, the delinquency will be referred to Fund counsel if the amount owed exceeds $15,000; otherwise, the delinquency may, but need not, be referred to Fund counsel, and such referral shall be in the discretion of the Funds Administrator and Co-Chairmen.

### 6.    Legal Action

Upon referral to Fund counsel, Counsel may make a written demand upon the employer for Payment, notifying the employer that a civil action may be initiated if the full amount is not received or other acceptable arrangement reached with the Trustees within seven (7) business days of Counsel's letter.  If neither payment is received, nor an alternate arrangement entered into, Counsel will initiate legal action unless based upon the recommendation of Counsel, the Trustees decide otherwise, based on pertinent factors, including but not limited to:

(a)    the amount owed;

    (b)    the financial condition of the employer;

    (c)    the employer's past performance;

    (d)    likelihood of collecting on a judgment; and

    (e)    any other factor considered relevant by the Trustees or Administrator, consistent with the recommendation of Counsel.

In the event a complaint is filed, the delinquent employer shall pay, in addition to the delinquent amount due and interest thereon, liquidated damages, reasonable attorneys' fees, court costs and expenses incurred.

### 7.    Litigation Guidelines

Unless the Trustees or the Funds Administrator decide otherwise, a lawsuit will not be commenced if delinquent contributions plus interest do not exceed $5,000. Counsel may not initiate a lawsuit while the Trustees are considering a recommendation of Counsel. Counsel may enter into settlement negotiations, orally or in writing, however, the Trustees shall approve or disapprove any proposed settlement. Where appropriate, counsel may recommend, after investigation, the commencement of collection efforts, including litigation, respecting the owner(s) of a delinquent contributing employer, or the potential alter ego(s) of a delinquent contributing employer. Appropriate consideration shall be given to the chances and costs of recovery, pursuant to PTE 76-1.

### 8.    Payroll Audit Policy and Guidelines

    (a)    The Trustees have the discretion to determine which employers will be subject to a payroll audit. Employers generally will be audited once during a two-year period and the audit will cover the period since the last audit, unless circumstances dictate otherwise.

    (b)    Delinquent contractors will be subject to an immediate audit at the expense of the contractor. The audit will be performed by the Funds' Office auditor or an outside agency.

    (c)    After an employer ceases to have an obligation to contribute, that employer will remain subject to a payroll audit covering the period during which the employer was obligated to contribute.

    (d)    Prior to conducting an audit, the Funds' payroll audit staff will notify the employer via telephone and/or in writing of the upcoming audit, describing the documents requested for review and referring to the Trustees' authority to conduct such audits. This letter will be substantially in the form of Exhibit G.

    (e)    If, during an audit, the employer takes a position not consistent with the

auditor's understanding of the Collective Bargaining Agreement, or encounters an issue of interpretation of the Collective Bargaining Agreement, the auditor will complete the audit based on the auditor's understanding of the Collective Bargaining Agreement which should be informed by consultation with the Fund office. The audit report will specifically describe the dispute, stating both the employer's and auditor's understanding of the Collective Bargaining Agreement, and that the audit was completed based on the auditor's understanding of the Collective Bargaining Agreement. The employer will have thirty (30) days after the date of the letter informing the employer of the audit findings to appeal the audit findings to the Trustees, and shall pay all undisputed amounts within that time. Such appeal must be submitted in writing to the Trustees and shall include all materials deemed pertinent by the employer. The Trustees have full and exclusive authority to determine any facts in dispute, interpret the Collective Bargaining Agreement and this procedure, and resolve such appeal. This determination, interpretation, and resolution will be considered to be an interpretation of a plan document and be final and binding on the employer. The employer will be informed in writing of the Trustees' interpretation and, for the purposes of all other collection procedures under this Policy, the due date for payment of the disputed amount will be ten (10) business days following the date of the letter advising the employer of the Trustees decision. The Trustees retain all rights afforded under applicable law.

(f)     Where an audit determines there are unpaid contributions owed, the unpaid amount will include accrued interest from the due date of the unpaid contribution. The interest rate shall be the rate charged by the Internal Revenue Service for delinquent taxes in accordance with section 6621(a) of the Internal Revenue Code applicable to the period of the delinquency, plus one percentage point in excess of such rate.

(g)     Upon completion of the audit, the Trustees, through the Administrative Office of the Plans, will notify the delinquent employer, in writing, of the delinquent amount, and the interest charges. A payroll audit report will accompany this letter showing the findings.

(h)     In addition, the employer shall be notified that, if such delinquent contributions and interest are not paid in a timely manner, the matter may be referred to Counsel for further collection activities. If such amounts are not paid in a timely manner, the matter may be referred to Counsel for collection forthwith.

(i)     In the event an employer refuses to permit an audit upon request by the Trustees, or if the employer refuses the Fund auditor access to pertinent records, then the Fund auditor shall refer the matter to legal Counsel, who shall demand in writing that the employer make available such books and records as are necessary for the Fund auditor to conduct an audit.

(j)     A payroll audit shall disclose any potential overpayments discovered.

9.     **Settlement and Compromise**

The Board of Trustees shall have the exclusive authority to compromise, settle or

abandon a claim or delinquency if the cost and expenses which would be involved in the filing of a complaint and in the proceeding with litigation would exceed the amount of the delinquency due, or if there are other good and sufficient reasons, such as the remote likelihood of collection, established on a case by case basis, for compromising a claim.   Any agreement to accept repayment over a period of time, to compromise a claim, or to terminate collection efforts, will be reduced to writing and will contain terms and conditions that are reasonable and consistent with this Policy.   Agreements to accept repayment over time shall, wherever possible and appropriate, be secured by personal guarantees of the principal(s) of the delinquent contractor and by the spouses of those principals.   Between regularly scheduled meetings of the Trustees, the co-chairs of the Board of Trustees shall have, in consultation with the Administrative Office of the Funds and Counsel, the authority to compromise, settle or abandon, a claim in accordance with this Policy.   The co-chairs may delegate this authority to the Administrator or Assistant Administrator, on terms that they shall specify.   As of the effective date of this Policy, this authority shall have been delegated, to the Administrator and/or Assistant Administrator, respecting matters involving payment in full of delinquencies over time, and involving delinquencies under $15,000 where Counsel recommends compromise.

### 10.     Termination of Benefits

The benefits of participants are subject to termination as permitted by ERISA and pursuant to the general eligibility rules of the plans.

### 11.     Effective Date

The Policy for Collection of Delinquent Contributions is effective as of March 1, 2014 and supersedes the previous Policy.   This Policy shall be applicable to all delinquencies arising after that date; provided, however, the foregoing rules and regulations shall be applicable to all delinquencies arising out of audits that are completed on or after said date irrespective of the period for which contributions are due.   The Trustees shall review this Policy every three years, or at such other interval as they shall deem appropriate.

### 12.     Reports

The Plan Administrator shall prepare a delinquency report to be presented at each meeting of the Trustees identifying: each delinquent employer, the amount owed, the time period for which the amount is owed and a brief description of collection activities taken to date. Decisions and determinations of the Trustees with regard to any issue will be noted in the minutes of such meeting. The Plan Administrator shall also maintain a file of Collective Bargaining Agreements, audit reports and workpapers, and written settlement agreements. Counsel shall provide an oral or written report on the status of delinquencies referred to counsel at each meeting of the Trustees.

**TRUSTEES:**

_Gary J. Masino_
Gary J. Masino
Co-Chairman

_Edmund J. Bransfield_
Edmund J. Bransfield
Co-Chairman

_Thomas J. Klingenberg_
Thomas J. Klingenberg

_Roeland F. Hoeke_
Roeland F. Hoeke

_Patrick F. Doyle_
Patrick F. Doyle

_Richard Borradaile_
Richard Borradaile

_Charles J. Burkert_
Charles J. Burkert

_Ernest J. Menold_
Ernest J. Menold

Dated: 3/13/14

# EXHIBIT "C"

LAW OFFICES

# SPEAR WILDERMAN

*A Professional Corporation*

230 SOUTH BROAD STREET, SUITE 1400, PHILADELPHIA, PA 19102

TEL: (215) 732-0101  FAX: (215) 732-7790

WARREN J. BORISH*
SAMUEL L. SPEAR
JAMES F. RUNCKEL
CHARLES T. JOYCE*
BENJAMIN EISNER◊
WENDY CHIERICI*
JAMES KATZ*
MARTIN W. MILZ*
LOIS GARBER SCHWARTZ*
WILLIAM B. SANDERSON, JR.*
NICHOLAS J. BOTTA
SYRETTA J. MARTIN*
MELISSA A. LOVETT
F. TIGHE BURNS*
THEODORE P. DiMUZIO
CHRISTOPHER R. STOCKTON*

PA BAR EXCEPT:
* PA & NJ BAR
◊PA, NJ & DC BAR

NJ OFFICE:
1040 N. KINGS HIGHWAY
SUITE 202
CHERRY HILL, NJ 08034
(856) 482-8799 FAX: (856) 482-0343

BRUCE E. ENDY
RETIRED, 2017

LEONARD SPEAR
1923 - 2003

LOUIS H. WILDERMAN
1909 - 1993



December 21, 2017

***Via Certified and Regular Mail***

Mr. Joseph Esposito
Camden Mechanical LLC
1995 Ferry Avenue
Camden, NJ 08104

Re: **Sheet Metal Workers' Local 19 Benefit Funds ("Funds") -**
**Payments Due and Owing for Delinquent Contributions/Reports**

Dear Mr. Esposito:

Please be advised that this office is counsel for Sheet Metal Workers' Local 19 and the above-referenced Funds.

We have been advised that Camden Mechanical LL (hereinafter, the "Company") failed to timely remit contributions for work performed by Local 19 employees during the period of 1/1/17 through 10/31/17. As a result, the Funds believe the delinquent amount owed by the Company to be in the amount of **$96,101.14** in contractually and statutorily required liquidated damages.

The Company's failure to remit timely reports and/or contributions when due constitutes a violation of both the collective bargaining agreement and federal law. The Employee Retirement Income Security Act of 1974 (ERISA) provides for civil remedies and damages in such a situation.

Camden Mechanical LLC
December 21, 2017
Page 2

The Trustees of the Funds have a fiduciary obligation to pursue the recovery of the delinquent amounts owed.  As a result, the Funds demand payment of the amounts due and owing, be paid to the Funds within **ten (10) business days** from the date of this letter or, pursuant to the collective bargaining agreement, the Union may move to remove employees immediately and/or pursue an action in federal court.  We urge you to take immediate action to correct these arrearages by making payment in the total amount of **$96,101.14** to the Funds.

If you have any questions, please contact me at (215) 732-0101. Thank you.

Sincerely,

**SPEAR WILDERMAN, P.C.**

BY: _____
MARTIN W. MILZ, ESQUIRE

cc:   Dennis Siravo, Assistant Administrator (via e-mail)
Gary J. Masino, President (via e-mail)